# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| SETH ECKHARDT, *Individually and On Behalf of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM BANK FSB, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:18-cv-01180 <br> ) <br> ) <br> ) <br> ) <br> ) |

# <u>ORDER & OPINION</u>

This matter is before the Court on Defendant State Farm Bank FSB's Motion to Dismiss for Failure to State a Claim (Doc. 13). The Motion has been fully briefed and is ready for disposition. For the following reasons, Defendant's motion (Doc. 13) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

Plaintiff Seth Eckhardt has held a credit card issued by Defendant since 2017. (Doc. 11 at 5). When he became a cardholder, he was given a copy of the standard cardholder agreement, which stated in pertinent part: "Purchases. You may use your Card to purchase or lease goods or services ('Purchases') from merchants who honor Visa credit cards." (Doc. 11 at 11 (citing Doc 11-1 at 4)). The agreement further stated: "Quasi-cash transactions, described below, are deemed to be Cash Advances and not

---

[1] Because the Court must accept all well-pleaded facts in the Complaint as true, *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018), the facts necessary to resolve Defendant's motion are drawn from the Amended Complaint (Doc. 11) and from the docket.

Purchases." (Doc. 11 at 11 (citing Doc 11-1 at 4)). The agreement defined "quasi-cash transactions" as:

> [I]tems that are convertible to cash or similar cash-like transactions that we may designate from time to time, including wire transfer money orders, other money orders, travelers checks, or foreign currency or tax payments (so-called "quasi-cash transactions"). However, your Card may not be used to obtain, and we will not honor requests for, a Cash Advance in the form of casino chips, bets or wagers, gaming transactions (including Internet gambling), lottery tickets or the like. (Doc. 11 at 12 (citing Doc 11-1 at 4)).

Cash advances are treated less favorably than purchases. The annual percentage rate charged for cash advances is substantially higher than that for purchases, and a transaction fee is assessed for each cash advance while there is no corresponding fee for purchases. (Doc. 11 at 5; *see also* Doc 11-1 at 1).

On multiple occasions prior to February 2018, Plaintiff purchased cryptocurrency using his State Farm credit card. The cryptocurrency at issue herein is created with cryptographic functions (essentially mathematical algorithms) performed using a software called "Blockchain." (Doc. 11 at 6–7). It is described as "virtual money" but is not legal tender for public or private debts; neither its value nor production are regulated by any government at this time. (Doc. 11 at 6). One can obtain cryptocurrency by purchasing it from another; "mining" it, *i.e.,* creating new units of the cryptocurrency; or creating a new cryptocurrency altogether. (Doc. 11 at 6–9).

Prior to February 2018, Plaintiff's transactions acquiring cryptocurrency were treated as purchases within the meaning of the cardholder agreement and so listed in his monthly credit card statements. (Doc. 11 at 15). On February 4, 2018, Plaintiff

purchased cryptocurrency using his State Farm credit card, but that time, the transaction was treated as a cash advance and so listed on his monthly statement. (Doc. 11 at 15). Plaintiff was therefore charged a transaction fee, and the transaction was subjected to the higher interest charges attributable to cash advances per the agreement. (Doc. 11 at 15, Doc 11-1 at 1). Plaintiff attempted to negotiate with State Farm to remedy the "surprise Cash Advance fees and interest charges" to no avail. (Doc. 11 at 16).

## LEGAL STANDARD

Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing Plaintiff failed to state a claim upon which relief may be granted. (Doc. 13). To survive dismissal pursuant to Rule 12(b)(6), the complaint must contain a short and plain statement of the plaintiff's claim sufficient to plausibly demonstrate entitlement to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff is not required to anticipate defenses or plead extensive facts or legal theories but must plead enough facts to present a story that holds together. *Twombly*, 550 U.S. at 570; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

When faced with a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court

also accepts all well-pleaded factual allegations as true and draws all reasonable inferences from those facts in favor of the plaintiff. *Id.* Allegations that are, in reality, legal conclusions are not taken as true and cannot survive a Rule 12(b)(6) challenge. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## DISCUSSION

Congress enacted the Truth in Lending Act (TILA) to assure "a meaningful disclosure of credit terms" so consumers "will be able to compare more readily the various credit terms available . . . and avoid the uninformed use of credit." TILA, 15 U.S.C. § 1601(a). The statute further sought "to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Id.* To achieve these goals, Congress delegated rule-making authority to the Board of Governors of the Federal Reserve System (Board) and later to the Bureau of Consumer Financial Protection (Bureau), which currently holds rule-making authority. TILA, 15 U.S.C. § 1604(a); *see also Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 198 (2011) (noting rule-making authority had once been vested with the Board). Pursuant to this statutory authority, Regulation Z, 12 C.F.R. 1026 *et seq.*, was promulgated "to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, [and] to facilitate compliance therewith[,]" TILA, 15 U.S.C. § 1604(a).

Plaintiff's Amended Complaint (Doc. 11) alleges multiple violations of TILA and Regulation Z as well as breach of the cardholder agreement. Specifically, Count I alleges Defendant violated TILA, 15 U.S.C. § 1637(i)(2), and Regulation Z, 12 C.F.R. § 1026.9(c), by failing to provide Plaintiff and the putative class members advanced

notice of its intent to classify transactions acquiring cryptocurrency as cash advances rather than purchases. (Doc. 11 at 20–22). Count II alleges Defendant violated TILA, 15 U.S.C. § 1632(a), and Regulation Z, 12 C.F.R. § 1026.5(a)(1)(i), by failing to abide by the "clear and conspicuous" disclosure requirement. (Doc. 11 at 22–24). Count III alleges Defendant breached the cardholder agreement by classifying transactions acquiring cryptocurrency as cash advances. (Doc. 11 at 24–25). Count IV argues, alternative to Counts I and III, if advanced notice was not required and transactions acquiring cryptocurrency are, in fact, quasi-cash transactions, the prior monthly statements labeling such transactions as purchases failed to "reflect the terms of the legal obligations between the parties," as required by TILA, 15 U.S.C. § 1637(b), and Regulation Z, 12 C.F.R. § 1026.5(c). (Doc. 11 at 25–27). Count V argues, alternative to Count III, Defendant breached the cardholder agreement by delegating to a third party its right to designate transactions as cash advances. (Doc. 11 at 27–28). Finally, Count VI seeks a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, stating the terms of the cardholder agreement "do not permit State Farm to impose Cash Advance fees or interest charges on Plaintiff and the Class for buying virtual currencies from third-party credit card merchants." (Doc. 11 at 28).

Defendant has moved to dismiss all six counts. (Doc. 13). Unfortunately, the memoranda on the instant motion largely focus on the merits of Plaintiff's claims as opposed to the sufficiency of the Amended Complaint (Doc. 11). Specifically, many of the arguments turn on the pivotal question of fact presented in this controversy: whether cryptocurrency is cash-like. Questions of fact are inappropriate issues to

address in the context of a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Roberson ex rel. Roberson v. Novartis Pharm. Corp.*, No. 11 C 2035, 2011 WL 1740137, at *1 (N.D. Ill. May 5, 2011). At this stage of the proceeding, the Court is bound to accept Plaintiff's factual allegations as true and must draw all reasonable inferences therefrom in favor of Plaintiff. *Automation Aids, Inc.*, 896 F.3d at 839.

The remaining arguments presented by the parties require the Court to engage in statutory and regulatory interpretation. When interpreting a statute, the Court's primary focus is on the plain language enacted by Congress. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Doe v. Chao*, 540 U.S. 614, 630–31 (2004) (internal quotation marks omitted). Secondary tools of statutory construction are employed only if the plain language of the provision is ambiguous to the extent it is susceptible to more than one reasonable interpretation. *See United States v. Marcotte*, 835 F.3d 652, 656 (7th Cir. 2016) ("When a statute is unambiguous, our inquiry 'starts and stops' with the text." (quoting *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015))). Similarly, "[c]ourts interpreting a regulation first look to the regulation's text, and look past it only when it is ambiguous or where a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme." *Nat. Res. Def. Council v. Ill. Power Res. Generating, LLC*, No. 1:13-CV-1181, 2019 WL 208856, at *9 (C.D. Ill. Jan. 15, 2019) (internal quotation marks omitted).

## I. Count I – Alleged Violation of the Requirement to Disclose any Significant Change to the Terms of the Cardholder Agreement

In Count I, Plaintiff alleges Defendant violated TILA and Regulation Z by failing to provide adequate notice of a significant change in account terms when it decided to begin treating transactions acquiring cryptocurrency as cash advances rather than purchases. (Doc. 11 at 20–22; Doc. 14 at 15–19). Defendant argues no change-in-terms notice was required because the account terms never changed. (Doc. 13 at 7–10).

Regulation Z requires written notice of "a significant change in account terms" be given to "each consumer who may be affected" "at least 45 days prior to the effective date of the change[.]" 12 C.F.R. § 1026.9(c)(2)(i)(A); *see also* TILA, 15 U.S.C. § 1637(i)(2) ("In the case of any credit card account under an open end consumer credit plan, a creditor shall provide a written notice of any significant change, as determined by rule of the Bureau, in the terms (including an increase in any fee or finance charge . . .) of the cardholder agreement between the creditor and the obligor, not later than 45 days prior to the effective date of the change."). Regulation Z defines "significant change to an account term" as "a change to a term required to be disclosed under § 1026.6(b)(1) and (b)(2), an increase in the required minimum periodic payment, a change to a term required to be disclosed under § 1026.6(b)(4), or the acquisition of a security interest." 12 C.F.R. § 1026.9(c)(2)(ii). Section 1026.6(b) sets forth the requisite account-opening disclosures; among other things, the credit card issuer must disclose the various rates, fees, and charges authorized by the cardholder

agreement as well as the types of transactions to which each of the various rates, fees, and charges apply. Regulation Z, 12 C.F.R. § 1026.6(b)(1), (2), (4).

There appears no dispute that the definitions of "cash advance" and "purchase" are subject to Regulation Z's account-opening disclosure requirements, meaning the parties agree cardholders would be entitled to advance notice of any change to the definitions of those terms. Additionally, Plaintiff does not appear to allege the relevant provisions of the cardholder agreement were amended in the literal sense; thus, it appears no relevant term of the cardholder agreement was expressly changed or amended. The operative question is thus whether a change in *application* of the unchanged cardholder agreement—specifically, a change in how one particular transaction is classified within the enumerated types of transactions, which ultimately determines the applicable interest rate and transaction fee—is a significant change in account terms per Regulation Z.[2] The Court is aware of no case answering this question or a similar one,[3] and the parties have not directed the Court's attention to any such case.

---

[2] According to Plaintiff, the operative question "is whether Defendant changed the 'types of transactions' to which Defendant's *unchanged* Purchase rates or *unchanged* Cash Advance rates apply." (Doc. 14 at 18–19 (emphasis in original)). To answer this question, Plaintiff merely points to the change in treatment of transactions acquiring cryptocurrency. However, as will be discussed, the *types* of transactions to which the various rates and fees applied never changed. The only change Plaintiff alleges is how Defendant classified transactions acquiring cryptocurrency among the existing types of transactions set forth in the agreement. Plaintiff's framing of the issue is thus inaccurate.

[3] The Court is aware of a virtually identical complaint filed in the Southern District of New York; a motion to dismiss presenting this exact question is currently pending before that court. *Tucker v. Chase Bank USA N.A.*, 18-cv-3155, Doc. 39.

8

To resolve the issue at bar, the Court must begin with the text of Regulation Z. As stated, Regulation Z requires advance notice of a "significant change in account terms," which is a "change to a term required to be disclosed under § 1026.6(b)(1) and (b)(2), an increase in the required minimum periodic payment, a change to a term required to be disclosed under § 1026.6(b)(4), or the acquisition of a security interest." 12 C.F.R. § 1026.9(c)(2)(i), (ii). This definition clearly and unambiguously contemplates an actual change to a written term in the cardholder agreement—specifically, a term that must be disclosed pursuant to Regulation Z, 12 C.F.R. § 1026.6(b).

However, Plaintiff has not alleged an actual change to any term of the cardholder agreement. At all relevant times, the cardholder agreement identified and defined three types of transactions (purchases, quasi-cash transactions/cash advances, and balance transfers) and set forth the specific interest rate and transaction fee associated with each type of transaction. (*See* Doc. 11-1 at 5). The only change alleged is how Defendant classified transactions acquiring cryptocurrency among those enumerated types of transactions; Defendant first classified them as purchases and then as cash advances. This amounts to no more than a change in how the definitions of "purchase" and "quasi-cash transaction" were interpreted and applied to transactions acquiring cryptocurrency. But a change in how the terms of the agreement are interpreted or applied cannot reasonably be equated to an actual change to those terms. Plaintiff has thus failed to allege a significant change in

account terms, which is necessary to trigger the disclosure requirement set forth in Regulation Z, 12 C.F.R. § 1026.9(c)(2)(i).

The Court is not persuaded by Plaintiff's arguments otherwise. To start, Plaintiff argues: "Regulation Z requires advance notice to cardholders where the issuer changes 'the type of transaction to which [an unchanged] rate applies, if different rates apply to different types of transactions.'" (Doc. 14 at 18 (quoting Regulation Z, 12 C.F.R. § 1026.6(b)(4)(i)(C)). Plaintiff seemingly equates the change in how transactions acquiring cryptocurrency are classified to an actual change to the contract terms enumerating and defining the broad categories, or types, of transactions. Underlying is the flawed assumption that any change in how the terms of the agreement are interpreted and applied constitutes an actual change to those terms. In support, Plaintiff attempts to distinguish between "credit terms" and the written "contractual terms" by arguing credit terms may be changed without changing the contractual terms. (Doc. 14 at 18). But the Supreme Court has explicitly rejected this analysis, *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 206 n.5 (2011), which directly undermines Plaintiff's position.

Plaintiff's logical fallacy is illustrated by the very facts of this case. TILA and Regulation Z require creditors to disclose, among other things, the applicable schedule of interest rates and fees and identify the types of transactions to which each rate and fee apply. Regulation Z, 12 C.F.R. § 1026.6(b); TILA, 15 U.S.C. § 1637. The inconsistent classification of one particular transaction—here, first classifying transactions acquiring cryptocurrency as purchases and then later as cash

advances—does not change the broader types of transactions enumerated in the agreement or alter the fees and rates applied to those types of transactions. Defendant did not add transactions acquiring cryptocurrency as a separate *type* of transaction to which cash advance rates and fees apply; Defendant instead reclassified such transactions as quasi-cash transactions, an existing type of transaction. Thus, Defendant did not change the " 'types of transactions' to which Defendant's *unchanged* Purchase rates or *unchanged* Cash Advance rates apply," as Plaintiff argues.

Plaintiff's reliance on 12 C.F.R. § 1026.5(e) does not alter the outcome. Section 1026.5(e) states § 1026.9(c) disclosures may be required when an event renders the initial, account-opening disclosures inaccurate. Regulation Z, 12 C.F.R. § 1026.5(e). No disclosure expressly stated transactions acquiring cryptocurrency are purchases and not quasi-cash transactions, so Defendant's decision in early 2018 to begin classifying such transactions as cash advances as opposed to purchases did not render the requisite disclosure of the types of transactions to which the various rates and fees apply or the definitions thereof inaccurate *per se*.[4]

Similarly, the cases to which Plaintiff cites for his "reservation of right" argument are unavailing because they are inapposite. (*See* Doc. 14 at 16). Those cases

---

[4] This line of reasoning implicates Count II of Plaintiff's Amended Complaint. As will be discussed *infra*, Plaintiff has sufficiently alleged the definitions of "purchase" and "quasi-cash transaction" are unclear to the extent an ordinary consumer would not know in which category cryptocurrency falls. It is thus consistent for the Court to also conclude the inconsistent classification of cryptocurrency did not render either definition inaccurate *per se*.

dealt with "specific changes," which generally involve a change in terms explicitly outlined in the cardholder agreement. *See Swanson v. Bank of Am., N.A.*, 566 F. Supp. 2d 821, 825–26 (N.D. Ill. 2008), *aff'd*, 559 F.3d 653 (7th Cir. 2009) (examining whether advanced notice was required when a cardholder's interest rate increased following an exceedance of the credit limit and the cardholder agreement explicitly allowed a rate increase in such a situation); *McCoy*, 562 U.S. at 197 (examining the same issue); *Williams v. Wash. Mut. Bank*, No. CIV. 07-2418, 2008 WL 115097, at *1 (E.D. Cal. Jan. 11, 2008) (examining an interest rate increase imposed at the discretion of the card issuer, as allowed by the cardholder agreement). Unlike here, each of these cases saw a clear change in account terms: an altered interest rate. Again, no account or cardholder agreement term was changed here.

Notably, this line of cases supports the Court's reading of Regulation Z to require advanced notice only when an actual change occurs. In fact, *McCoy* phrased the issue as: "whether the [interest rate] increase actually changed a 'term' of the Agreement that was required to be disclosed under [Regulation Z, 12 C.F.R. § 1026.6(b)].' " *McCoy*, 562 U.S. at 205. The Supreme Court went on to state: "If not, [Regulation Z, 12 C.F.R. § 1026.9(c)(2)]'s subsequent notice requirement with respect to a 'change in terms' does not apply." *Id.* Thus, the Supreme Court has interpreted § 1026.9(c)(2) to require an actual change to a term of the cardholder agreement.

In sum, underpinning Plaintiff's entire argument is the fundamentally flawed assumption that a change in how the terms of the cardholder agreement are interpreted and applied equates to an actual change to the terms of the agreement.

(*See* Doc. 14 at 15–19). To the contrary, a change in interpretation and application is not an actual change to the terms being interpreted and applied. The change here—Defendant's decision to begin classifying transactions acquiring cryptocurrency as cash advances—did not change any account term outlined in the cardholder agreement. Consequently, Plaintiff was not entitled to advanced notice per Regulation Z, 12 C.F.R. § 1026.9(c)(2).

Count I is therefore dismissed pursuant to Rule 12(b)(6). To the extent Plaintiff is able to plead facts demonstrating an actual change in account terms, the Court will allow Plaintiff an opportunity to replead Count I. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

While Court need not address the parties' respective arguments citing official commentary on Regulation Z because 12 C.F.R. § 1026.9(c)(2) unambiguously requires an actual change in account terms, the Court is concerned with Plaintiff's argument citing the official commentary. Specifically, Plaintiff argues:

> TILA and Regulation Z thus required Defendant to notify Plaintiff that Cash Advance rates would suddenly begin applying to crypto purchases. *See* Supplement I, 12 C.F.R. § 1026.9(c)(2), comment 1. (explaining that "notice must be given [even] if the [initial] contract allows the creditor to [change a "significant account term"] at its discretion."). (Doc. 14 at 16).

The comment actually states: "In contrast, notice must be given if the contract allows the creditor to increase a rate or fee at its discretion." Supplement I, 12 C.F.R. § 1026.9(c)(2), cmt. 1. When read in context, the statement refers to the types of specific changes, interest rate increases, discussed in *McCoy* as opposed to the type of change at issue here. While Plaintiff may certainly argue this statement supports his

position, Plaintiff's alteration of the quote—the addition of bracketed words—rendered the quote misleading. The Court notes Plaintiff uses this misleading tactic multiple times in his memoranda.

Defendant has likewise made a misleading statement, specifically: "Further, another section of Regulation Z, Section 1026.9(g), provides that banks are not required to provide notice of rate increases 'that are not due to a change in the contractual terms of the consumer's account.' 12 C.F.R. § 1026.9(c)(2)(i)(A)." (Doc. 13 at 8). Section 1026.9(c)(2)(i)(A) actually states: "Increases in the rate applicable to a consumer's account due to delinquency, default or as a penalty described in paragraph (g) of this section that are not due to a change in the contractual terms of the consumer's account must be disclosed pursuant to paragraph (g) of this section instead of paragraph (c)(2) of this section." Regulation Z, 12 C.F.R. § 1026.9(c)(2)(i)(A). Contrary to Defendant's assertion, neither § 1026.9(c)(2)(i)(A) nor subsection (g) state no notice is required where there is no change in contract terms; subsection (g) instead explains the notice requirements applicable when an interest rate is increased due to delinquency, default or as a penalty and is irrelevant here.

The parties are reminded of their duty of candor to the Court. Misleading statements are unacceptable and run afoul of Federal Rule of Civil Procedure 11(b). Counsel for the parties are admonished to take care to ensure future filings comply with Rule 11 and are free from misleading or inaccurate statements.

## II. Count II – Alleged Violation of the Requirement that Disclosures be Clear and Conspicuous

TILA and Regulation Z require the mandatory account-opening disclosures be presented clearly and conspicuously. TILA, 15 U.S.C. § 1632(a); Regulation Z, 12 C.F.R. § 1026.5(a)(1)(i); *see also* Regulation Z, 12 C.F.R. § 1026.6(b)(4)(i)(C) (noting the mandatory account-opening disclosures must indicate "[t]he type of transaction to which [a] rate applies, if different rates apply to different types of transactions."). Clarity is examined "from the standpoint of the ordinary consumer." *Handy v. Anchor Mortg. Corp.*, 464 F.3d 760, 764 (7th Cir. 2006); *see also Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327–28 (7th Cir. 1999) ("The sufficiency of TILA-mandated disclosures is to be viewed from the standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor." (internal quotation marks omitted)).

In Count II, Plaintiff alleges Defendant's account-opening disclosures violated this requirement because the definition of "quasi-cash transaction" was unclear and ambiguous. (Doc. 11 at 23–24; Doc. 14 at 14–15). Defendant argues Count II should be dismissed because cryptocurrency is cash-like and the disclosures were thus sufficiently clear to allow an ordinary consumer to conclude transactions acquiring cryptocurrency are cash advances. (Doc. 13 at 11–14). Defendant's argument presents an issue of fact: whether cryptocurrency is indeed cash-like. Issues of fact ought not be resolved in the context of a Rule 12(b)(6) motion, as the facts alleged in the complaint must be taken as true. *See id.*; *Roberson*, 2011 WL 1740137 at *1.

The Court's focus is instead on the sufficiency of the Amended Complaint. Here, the factual allegations in Plaintiff's Amended Complaint, when taken as true, plausibly indicate the initial disclosures were unclear—particularly, the portion of the disclosures defining "purchase" and "quasi-cash transaction." "Cash" is defined in Random House Webster's Unabridged Dictionary as: "money in the form of coins or bank-notes, esp[ecially] that issued by a government." Random House Webster's Unabridged Dictionary 322 (2d ed. 2001). Plaintiff has plausibly alleged facts indicating cryptocurrency is unlike this definition of "cash" and is instead more akin to a good, such as software. (*See* Doc. 11 at 6-9, 12-15). According to Plaintiff, an ordinary consumer would therefore consider transactions acquiring cryptocurrency purchases as opposed to cash advances, or, at the very least, would not know in which category such transactions fall. (Doc. 11 at 24; Doc. 14 at 14–15). This, Plaintiff claims, is exacerbated because cryptocurrency is dissimilar to the examples of quasi-cash set forth in the definition of "quasi-cash transaction." (Doc. 11 at 12-14, 23–24). That Defendant treated transactions acquiring cryptocurrency as purchases until February 2018 also reasonably and plausibly indicates the definitions are unclear.

The Court finds Plaintiff has met the requirements of Rule 8(a) with respect to Count II by alleging facts plausibly indicating the initial disclosures were unclear. Dismissal pursuant to Rule 12(b)(6) is therefore inappropriate. *See Smith*, 195 F.3d at 328.

### III.     Counts III and V – Alleged Breach of Contract

"In Illinois, a breach of contract claim consists of: 1) the existence of a valid and enforceable contract, 2) breach of the contract by the defendant, 3) performance

by the plaintiff, and 4) resulting injury to the plaintiff." *Northbrook Bank & Tr. Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 42, 102 N.E.3d at 861, 874. At this stage of the proceeding, breach is the only element at issue, as Plaintiff has alleged the existence of a valid and enforceable contract (the cardholder agreement), performance by Plaintiff (authorized use of his credit card), and injury (money damages).

A. *Count III – Classification of Transactions Acquiring Cryptocurrency as Cash Advances*

In Count III, Plaintiff alleges Defendant breached the cardholder agreement by classifying transactions acquiring cryptocurrency as cash advances rather than purchases. (Doc. 11 at 24–25). Defendant argues Count III ought to be dismissed pursuant to Rule 12(b)(6) because cryptocurrency is cash-like and therefore may properly be classified as a quasi-cash transaction—thus, a cash advance—pursuant to the cardholder agreement. However, as explained, whether cryptocurrency is cash-like is a question of fact. The Court is bound to accept as true Plaintiff's factual allegations supporting his argument cryptocurrency is not cash-like but rather is a good (*see* Doc. 11 at 6-9, 12-15), meaning Plaintiff has sufficiently alleged breach. Defendant's motion to dismiss Count III must therefore be denied.

B. *Count V – Designation by a Third Party*

In Count V, Plaintiff alleges, alternative to Count III, Defendant breached the cardholder agreement as well as the implied covenant of good faith and fair dealing by allowing a third party to designate transactions acquiring cryptocurrency as cash advances. (Doc. 11 at 27). The basis for Defendant's motion to dismiss this claim is unclear; Defendant states the cardholder agreement would not be violated if

Defendant allowed a third party to designate certain transactions as cash advances, but Defendant cites no contract provision or legal authority supporting this position nor does Defendant even mention the implied covenant of good faith and fair dealing. (*See* Doc. 13 at 16).

The United States judicial system is adversarial. *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)). The Court expects litigants to present cogent, fully-formed arguments adequately supported in law and fact. *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012). ("Merely reciting the [applicable legal] standard and then tossing the motion into the court's lap is not enough."). Indeed, Local Rule 7.1(B)(1) requires litigants identify "the specific points or propositions of law and supporting authorities upon which the moving party relies." Defendant's argument wholly fails to meet these rudimentary standards. The Court declines to step into the role of advocate to make Defendant's argument for it and therefore denies as waived Defendant's motion to dismiss Count V. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" are waived).

## IV. Count IV – Alleged Violation of the Requirement to Provide Accurate Periodic Statements

Count IV alleges, alternative to Counts I and III, Defendant violated TILA and Regulation Z by failing to provide Plaintiff and the putative class members with accurate periodic account statements. Specifically, Plaintiff alleges the pre-February 2018 periodic statements listing transactions acquiring cryptocurrency as purchases, as opposed to cash advances, were inaccurate and therefore noncompliant. (Doc. 11

18

at 26). Defendant argues Count IV should be dismissed because (1) Plaintiff failed to identify a violation of any specific disclosure requirement and (2) the inaccuracy—the classification of transactions acquiring cryptocurrency as purchases rather than cash advances—resulted in a windfall for Plaintiff rather than damages. (Doc. 13 at 15).

TILA requires credit card issuers to provide account statements following each billing cycle. TILA, 15 U.S.C. § 1637(b). Both TILA and Regulation Z set forth a number of items that must appear in the account statement, to the extent they are applicable. *Id.*; Regulation Z, 12 C.F.R. § 1026.7(b). In essence, the requisite items describe exactly what was applied to the cardholder's account during the billing cycle at issue, such as transactions, interest rates, fees, and credits. TILA, 15 U.S.C. § 1637(b); Regulation Z, 12 C.F.R. § 1026.7(b). Plaintiff has not alleged Defendant violated either TILA, 15 U.S.C. § 1637(b), or Regulation Z, 12 C.F.R. § 1026.7(b), by failing to accurately state any of the requisite items in any particular account statement. Absent such an allegation, Plaintiff has failed to state claim for relief.

Plaintiff's argument boils down to the following accusation: if transactions acquiring cryptocurrency have always been quasi-cash transactions—therefore, cash advances—then the account statements designating such transactions as purchases were inaccurate. (*See* Doc. 11 at 26). But even assuming the statements at issue inaccurately classified transactions acquiring cryptocurrency as purchases rather than cash advances, the statements nevertheless accurately reflected how the transactions were treated and what was actually applied to Plaintiff's account in

connection with those transactions, consistent with the purpose of TILA, 15 U.S.C. § 1637(b), and Regulation Z, 12 C.F.R. § 1026.7(b).

Contrary to Plaintiff's belief, 12 C.F.R. § 1026.5(c) does not support his claim. Section 1026.5(c) states: "Disclosures shall reflect the terms of the legal obligation between the parties." While this broad, general requirement does apply to periodic account statements, the periodic statements at issue nevertheless accurately reflected Plaintiff's legal obligations to Defendant by stating the fees and interest rates actually applied to his account in connection with his transactions acquiring cryptocurrency. Thus, the periodic statements at issue do not run afoul of § 1026.5(c). *See also McIntyre v. Household Bank*, No. 02 C 1537, 2004 WL 2958690, at *15 (N.D. Ill. Dec. 21, 2004) (rejecting a similar argument and noting the canons of statutory interpretation require the specific provisions in 12 C.F.R. § 1026.7(b) take precedence over the general provision in 12 C.F.R. § 1026.5(c) and holding absent a specific violation of § 1026.7(b), there is no violation of § 1026.5(c)).

For the for these reasons, Count IV is dismissed pursuant to Rule 12(b)(6). Because the deficiency could be factual rather than legal, the Court will allow Plaintiff an opportunity to replead Count IV. *See Runnion*, 786 F.3d at 519.

## V.    Count VI – Request for Declaratory Judgment

Finally, Defendant argues Plaintiff's claim for declaratory judgment (Doc. 11 at 28) should be dismissed because it is "based on the false premise that cryptocurrency is not 'cash-like[.]' " (Doc. 13 at 14). Again, whether cryptocurrency is cash-like is a question of fact, and Plaintiff has plausibly alleged cryptocurrency is not cash-like (Doc. 11 at 6-9, 12-15). Because the Court must accept this factual

allegation as true at this stage of the proceeding, Defendant's motion to dismiss Count VI must be denied.

CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 13) is GRANTED IN PART and DENIED IN PART. Defendant's Motion is GRANTED as to Counts I and IV, which are DISMISSED WITHOUT PREJUDICE. To the extent Plaintiff is able to cure the deficiencies identified in Counts I and IV, Plaintiff may file a second amended complaint within twenty-one (21) days of this Order. Defendant's Motion is DENIED as to Counts II, III, V, and VI.


SO ORDERED.

Entered this 12th day of March 2019.

      /s Joe B. McDade      
JOE BILLY McDADE
United States Senior District Judge
